Filed 5/30/14  P. v. Ybarra CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B250293 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA081466) |
| v. | |
| ERIK YBARRA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  James Pierce, Judge.  Affirmed.

Verna Wefald for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Taylor Nguyen, Deputy Attorneys General for Plaintiff and Respondent.

_____

In a previous appeal in this matter, we conditionally reversed Eric Ybarra's convictions on charges of kidnapping, rape, and forcible oral copulation, remanded for a hearing on the timeliness of the charges, and affirmed the judgment in all other respects. On remand, the superior court conducted a hearing and determined that the charges were timely filed, and the court accordingly reinstated the judgment of conviction and sentence. Ybarra again appeals, and we affirm.

BACKGROUND

The information filed on December 17, 2009, charged Ybarra with one count of kidnapping for sexual purposes in violation of subdivision (d) of Penal Code former section 208[1] (count 1), one count of forcible rape in violation of subdivision (a)(2) of former section 261 (count 2), and one count of forcible oral copulation in violation of subdivision (c) of former section 288a (count 3). As to counts 2 and 3, the information also alleged under subdivisions (b), (c), and (e) of former section 667.61 that Ybarra had kidnapped the victim in violation of former section 207. It further alleged under subdivision (e)(4) of former section 1203 that Ybarra had been convicted of felonies twice in California.[2]

A jury convicted Ybarra on all counts, and the court sentenced him to 27 years in state prison. We conditionally reversed and remanded for a hearing on the timeliness of the charges, but we affirmed the judgment in all other respects. (*People v. Ybarra* (Dec. 31, 2012, B232640) [nonpub. opn.].) We explained that, under the governing statute, the 2009 charges concerning crimes committed in 1995 were timely only if the biological evidence collected from the victim was "analyzed for DNA type no later than January 1, 2004." (*Ibid.*) Because the prosecution did not attempt to prove the necessary facts at either the preliminary hearing or the trial, and we could not determine from the

---

[1]    All subsequent statutory references are to the Penal Code unless otherwise indicated.

[2]    Because the charged crimes took place in 1995, the statutory citations in the information refer to the versions of those statutes that were in effect in 1995.

available record whether the charges were timely, we conditionally reversed and remanded for a hearing on the issue. (*Ibid.*)

On May 14, 2013, the superior court conducted the hearing as directed. The prosecution introduced one exhibit and called one witness.

The exhibit was a report from Reliagene Technologies, Inc. presenting the results of DNA analysis of biological evidence collected from the victim of the crimes that were ultimately charged against Ybarra. The report is dated October 26, 2001. It states that Reliagene received the evidence on October 12, 2001. The report also bears the signatures of Amrita Lal, who is identified as a "Technical Laboratory Manager," and Ana Paunovic, who is identified as a "Forensic DNA Analyst II." Both signatures are dated October 29, 2001.

The witness who testified at the hearing was Amrita Lal-Patterson, who identified herself as the manager who had signed the Reliagene report. Lal-Patterson testified concerning the process of testing the biological evidence and generating the report. She explained that she did not do the lab work herself, but as a manager she would "go through all the documentation to see if the analyst [in this instance, Paunovic] did everything that I would have done, and, if they did, do I agree with what their conclusions are. I review all the DNA profiles separately from what they do, and then I compare my results to their results." In the documentation in this case, she did not "see any notation of any disagreements." If she agreed with the analyst, then the report was prepared, reviewed, signed (by both analyst and manager), and issued.

Ybarra objected to all of Lal-Patterson's testimony as hearsay and as violating his confrontation rights. The court overruled the objections and admitted the testimony and the exhibit. Also, several times in the course of the hearing, the court emphasized its (correct) understanding that the sole purpose of the hearing was to determine whether the biological evidence collected from the victim was "analyzed for DNA type no later than January 1, 2004."

The court ruled that it was "overwhelmingly convinced that the testing was done in 2001," and thus the charges were timely filed. Accordingly, the court ordered that "the

3

previous judgment of conviction and sentence is reinstated on the same conditions and terms." Ybarra timely appealed.

## DISCUSSION

Ybarra argues that Lal-Patterson's testimony and the Reliagene report were inadmissible hearsay and that their admission violated his confrontation rights. We disagree.

The court admitted the report under the business records exception to the hearsay rule. (See Evid. Code, § 1271.) Ybarra's sole argument against that ruling is that the "integrity of the testing was a preliminary fact for laying a foundation for the admissibility of Lal-Patterson's testimony and [the report]," because the business records exception requires that "[t]he sources of information and method and time of preparation" of the record be "such as to indicate its trustworthiness." (Evid. Code, § 1271, subd. (d).) The court correctly observed, however, that the only issue to be determined at the hearing on remand was the testing date. Consequently, for purposes of admitting the Reliagene report as a business record at that hearing, the prosecution needed to show only that the sources of information and method and time of preparation indicated that the report was trustworthy *as to the date by which the analysis was performed*, not that the DNA analysis itself was trustworthy. The court did not abuse its discretion by determining that the report was trustworthy as to the date by which the analysis was performed, and Ybarra does not argue to the contrary.[3] We therefore reject Ybarra's argument that the report and Lal-Patterson's testimony based on it should have been excluded as hearsay.

As regards the Confrontation Clause, Ybarra argues that the admission of Lal-Patterson's testimony and the report violated his confrontation rights because the

---

[3]    In his reply brief, Ybarra argues for the first time that "dates can be, and often are, incorrectly recorded." Arguments raised for the first time in reply, however, are forfeited in the absence of a showing of good cause for failure to raise them earlier, and Ybarra makes no such showing. (See, e.g., *People v. Tully* (2012) 54 Cal.4th 952, 1075.) In any event, Ybarra's mere assertion that "dates can be, and often are, incorrectly recorded" is insufficient to demonstrate that the trial court abused its discretion by determining that the report (which bore both a printed date and two handwritten dates, all from October 2001) was trustworthy as to the date by which the DNA analysis was performed.

report is testimonial hearsay but Paunovic, who performed the DNA analysis, did not testify and was never made available for cross-examination. We are not persuaded.

"[T]he Sixth Amendment to the federal Constitution gives a criminal defendant the right to confront and cross-examine adverse witnesses." (*People v. Lopez* (2012) 55 Cal.4th 569, 576 (*Lopez*).) "[T]he prosecution may not rely on 'testimonial' out of-court statements unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination." (*Ibid.*, quoting *Crawford v. Washington* (2004) 541 U.S. 36, 59.) Synthesizing United State Supreme Court case law on the meaning of the term "testimonial," the Court in *Lopez* concluded that "a statement is testimonial when two critical components are present." (*Lopez*, at p. 581.) "First, to be testimonial the out-of-court statement must have been made with some degree of formality or solemnity." (*Ibid.*) "Second, . . . an out-of-court statement is testimonial only if its primary purpose pertains in some fashion to a criminal prosecution." (*Id.* at p. 582.)

In *Lopez*, the Court, applying the first requirement, determined that a laboratory analyst's report was not testimonial because it was not made with sufficient formality and solemnity. (*Lopez*, *supra*, 55 Cal.4th at p. 584.) Neither the analyst nor his assistant "signed, certified, or swore to the truth of the contents" of the relevant portion of the report, which consequently was "not prepared with the formality required by the high court for testimonial statements." (*Ibid.*) The Court distinguished a case in which certain "'certificates were sworn to before a notary . . .' by the testing analysts who had prepared the certificates. [Citation.]" (*Id.* at p. 585.) The Court likewise distinguished a case in which "the laboratory analyst's certificate regarding the result of his analysis was "'formalized" in a signed document' that expressly referred to court rules providing for the admissibility of such certificates in court. [Citation.]" (*Ibid.*)

In *People v. Dungo* (2012) 55 Cal.4th 608 (*Dungo*), the Court applied both requirements to determine that an autopsy report's description of the condition of the victim's body was not testimonial. (*Id.* at pp. 619-621.) First, the Court reasoned that the report's statements concerning the condition of the victim's body "merely record[ed]

objective facts" and were consequently "less formal than statements setting forth a pathologist's expert conclusions. They are comparable to observations of objective fact in a report by a physician who, after examining a patient, diagnoses a particular injury or ailment and determines the appropriate treatment. Such observations are not testimonial in nature." (*Id.* at p. 619.) Second, the Court explained that "[t]he usefulness of autopsy reports, including the one at issue here, is not limited to criminal investigation and prosecution; such reports serve many other equally important purposes. For example, the decedent's relatives may use an autopsy report in determining whether to file an action for wrongful death. And an insurance company may use an autopsy report in determining whether a particular death is covered by one of its policies. [Citation.] Also, in certain cases an autopsy report may satisfy the public's interest in knowing the cause of death, particularly when (as here) the death was reported in the local media. In addition, an autopsy report may provide answers to grieving family members." (*Id.* at p. 621.) Accordingly, the Court concluded that "criminal investigation was not the primary purpose for the autopsy report's description of the condition of [the victim's] body; it was only one of several purposes." (*Ibid.*)

Applying the criteria articulated in *Lopez* and *Dungo*, we conclude that the first criterion is sufficient to establish that the Reliagene report was not testimonial. As regards the date by which the DNA analysis was performed, the report lacked the necessary formality because it merely recorded an objective fact (namely, the date) in the same manner as the portion of the autopsy report (and the hypothetical physician's examination report) discussed in *Dungo*. (See *Dungo*, *supra*, 55 Cal.4th at p. 619.) "Such observations are not testimonial in nature." (*Ibid.*) The report also lacked formality in that, although both Paunovic and Lal-Patterson signed it, they did not certify or swear to the truth of its contents, and it did not refer to court rules providing for its admissibility. (See *Lopez*, *supra*, 55 Cal.4th at pp. 584-585.)

For all of the foregoing reasons, we reject Ybarra's argument that his confrontation rights were violated by the admission of the Reliagene report and Lal-Patterson's testimony based on that report.

6

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

ROTHSCHILD, Acting P. J.

We concur:

JOHNSON, J.

MILLER, J.*

---

*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7